Karen Barth Menzies (CA SBN 180234)
karen@justicelc.com
**JUSTICE LAW COLLABORATIVE, LLC**
6701 Center Drive West, 1400, Los Angeles, California 90045
Telephone: (310) 363-0030

Noble McIntyre (OK No. 16359) (*pro hac vice* forthcoming)
noble@mcintyrelaw.com
Christopher Schnieders (MO No. 57725) (*pro hac vice* forthcoming)
chris@mcintyreschnieders.com
**MCINTYRE SCHNIEDERS**
6731 W. 121st St., Overland Park, Kansas 66209
Telephone: (913) 627-9416

David Grossman (NY No. 2693919) (*pro hac vice* forthcoming)
dgrossman@kellyandgrossman.com
**KELLY & GROSSMAN, LLP**
1248 Montauk Highway, West Islip, New York 11795
Telephone: (631) 314-4996

J. Carl Cecere (*pro hac vice* forthcoming)
ccecere@cecerepc.com
**CECERE PC**
6035 McCommas Boulevard, Dallas, Texas 75206
Telephone: (469) 600-9455

*Counsel for Plaintiff, County of Sacramento*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COUNTY OF SACRAMENTO,<br><br>Plaintiff,<br><br>vs.<br><br>PHILIP MORRIS USA, INC., ALTRIA GROUP, INC., R.J. REYNOLDS TOBACCO COMPANY, REYNOLDS AMERICAN INC., SANTA FE NATURAL TOBACCO COMPANY, INC., BRITISH AMERICAN TOBACCO P.L.C., ITG BRANDS, LLC, LIGGETT GROUP, LLC, LIGGETT VECTOR BRANDS LLC, PITCO TOBACCO, INC., and DOES 1 THROUGH 100,<br><br>Defendants. | **Case No. 2:26-cv-02939-TLN-CKD**<br><br>***(Removed from Superior Court of California, County of Sacramento, Case No. 26CV017286)***<br><br>**PLAINTIFF'S NOTICE OF AND MOTION TO REMAND AND REQUEST TO HOLD RESPONSIVE-PLEADING DEADLINES IN ABEYANCE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Action Filed: 07/17/2026<br>Trial Date: TBD |

**TABLE OF CONTENTS**

I. INTRODUCTION ....................................................2

II. BACKGROUND ....................................................3

III. ARGUMENT ....................................................4

A. Legal Standard ....................................................4

B. Remand is Required because this Court Lacks Subject-Matter Jurisdiction ....................................................5

1. The County's State-Law Causes of Action Do Not Necessarily Raise Any Disputed Issue of Federal Law ....................................................5

i. The County's Design-Defect Claims Do Not Require Proof that a Safer Alternative Design Would Satisfy TCA's Requirements for Product Modification ....................................................6

ii. The County's Public Nuisance Claim Does Not Require "Reweighing" Any Regulatory Balance Struck by Congress or the FDA ....................................................9

2. The Removing Defendants Have Not Shown that Any Federal Issue is Substantial to the Federal System as a Whole ....................................................12

3. Congress has Struck the Balance of Judicial Responsibility in Favor of State-Court Adjudication ....................................................13

C. The County is Entitled to an Award of Attorney Fees ....................................................13

IV. CONCLUSION ....................................................13

V. CERTIFICATE REGARDING MEET AND CONFER ....................................................14

## TABLE OF AUTHORITIES

**CASES**

*ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality of Mont.*, 213 F.3d 1108 (9th Cir. 2000) .......... 4

*Barker v. Lull Eng'g Co.*, 20 Cal.3d 413 (1978) .......... 7, 8

*Bd. of Comm'rs of Se. La. Flood Protection Auth.-East v. Tenn. Gas Pipeline Co., L.L.C.*, 850 F.3d 714 (5th Cir. 2017) .......... 11

*Bender v. Jordan*, 623 F.3d 1128 (D.C. Cir. 2010) .......... 12

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987) .......... 4, 5, 6, 8, 9

*City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020) .......... 4, 5, 6, 12

*Cty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018). .......... 6

*Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986). .......... 5, 12

*Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677 (2006) .......... 5

*Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546 (2005) .......... 4

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 137 (2000) .......... 6

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) .......... 1, 5, 6, 11, 13

*Gunn v. Minton*, 568 U.S. 251 (2013) .......... 5, 6, 11, 12

*Healy v. Ratta*, 292 U.S. 263 (1934). .......... 4

*Kim v. Toyota Motor Corp.*,
6 Cal. 5th 21 (2018) .......... 7

*Major v. R.J. Reynolds Tobacco Co.*,
14 Cal. App. 5th 1179 (2017) .......... 9, 10, 12

*Martin v. Franklin Capital Corp.*,
546 U.S. 132 (2005) .......... 13

*Mayor & City Council of Baltimore v. Philip Morris USA Inc.*,
No. 1:23-cv-00303-JRR, 2024 WL 229586 (D. Md. Jan. 19, 2024) .......... 2, 7, 9, 10, 12, 13

*McKay v. City and Cty. of San Francisco*,
No. 16-CV-03561 NC, 2016 WL 7425927 (N.D. Cal. Dec. 23, 2016) .......... 11

*Merrill v. Navegar, Inc.*,
26 Cal. 4th 465 (2001) .......... 8

*Nevada v. Bank of Am. Corp.*,
672 F.3d 661 (9th Cir. 2012) .......... 6

*People ex rel. Gallo v. Acuna*,
14 Cal. 4th 1090, 1105 (1997) .......... 9

*Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*,
559 F.3d 772 (8th Cir. 2009) .......... 11

*R.J. Reynolds Tobacco Co. v. Cty. of Los Angeles*,
29 F.4th 542 (9th Cir. 2022) .......... 9

*R.J. Reynolds Tobacco Co. v. Marotta*,
214 So. 3d 590 (Fla. 2017) .......... 9

*Rains v. Criterion Sys., Inc.*,
80 F.3d 339 (9th Cir. 1996) .......... 6

*U.S. Smokeless Tobacco Mfg. Co. v. City of New York*,
708 F.3d 428 (2d Cir. 2013) .......... 9

**STATUTES**

21 U.S.C. § 387p(a), .......... 9

21 U.S.C. § 387j(a)(1) .......... 7

21 U.S.C. § 387p(b) .......... 9, 13

28 U.S.C. § 1331 ........ 1, 4, 5, 6, 13

28 U.S.C. §§ 1367 ........ 4

28 U.S.C. §§ 1441 ........ 4

28 U.S.C. §§ 1446 ........ 4

28 U.S.C. § 1447(c) ........ 1, 13

Cal. Bus. & Prof. Code § 17200 *et seq.* ........ 3

Cal. Civ. Code §§ 3479-3480 ........ 3

**OTHER AUTHORITIES**

*National Environmental Policy Act; Environmental Assessments for Tobacco Products; Categorical Exclusions*, 80 Fed. Reg. 57,531 (Sept. 24, 2015) ........ 10

**RULES**

Fed. R. Civ. P. 26(f) ........ 1, 14

**REGULATIONS**

40 C.F.R. parts 1500 to 1508. ........ 10

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff County of Sacramento moves under 28 U.S.C. § 1447(c) to remand this action to the Superior Court of California for the County of Sacramento, where it was filed as Case No. 26CV017286. Defendants Philip Morris USA Inc. and R.J. Reynolds Tobacco Company (the "Removing Defendants") invoke only 28 U.S.C. § 1331 and the narrow embedded-federal-question doctrine. The Complaint pleads exclusively California causes of action, no federal issue is a necessary element of any claim, and no federal issue is substantial in the jurisdictional sense required by *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).

Plaintiff also requests an award under 28 U.S.C. § 1447(c) of the costs and actual expenses, including attorney fees, incurred as a result of removal. If the Court grants remand, Plaintiff requests leave to file a fee declaration within fourteen days. Plaintiff further requests that only the deadlines to answer or otherwise respond to the Complaint be held in abeyance pending resolution of this motion. This request does not seek to stay discovery, the Rule 26(f) conference, initial disclosures, or other scheduling obligations.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Complaint and Notice of Removal on file, any reply and argument permitted by the Court, and all other matters of which the Court may take judicial notice.

DATED: September 22, 2026

**JUSTICE LAW COLLABORATIVE, LLC**

*<u>/s/Karen Barth Menzies</u>*
**KAREN BARTH MENZIES, ESQ.**

*-and-*

**NOBLE MCINTYRE, ESQ.**
**CHRISTOPHER SCHNIEDERS, ESQ.**
**MCINTYRE SCHNIEDERS**

**DAVID GROSSMAN, ESQ.**
**KELLY & GROSSMAN, LLP**

**J. CARL CECERE, ESQ.**
**CECERE PC**

*Counsel for Plaintiff, County of Sacramento*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Cigarette filters are the most common form of litter in the world, with an estimated 4.5 trillion discarded every year. Complaint, Dkt. No. 1-1, ¶ 1. Defendants account for a substantial share of the cigarette market. They have long known that conventional filters are made of cellulose acetate, a non-biodegradable plastic. The Complaint alleges that feasible biodegradable alternatives have long existed, yet Defendants continued to sell cigarettes using cellulose acetate filters. Defendants' refusal to adopt these alternatives affects Sacramento County and its residents, requiring the County to expend substantial public resources collecting and managing discarded filters while cigarette butts continue to accumulate on County-owned or maintained property and within County infrastructure, stormwater systems, and waterways.

The County seeks to hold Defendants responsible for a portion of the costs caused by that waste. To do so, it raises a series of garden-variety state-law causes of action and expressly disclaims reliance on federal law. The Removing Defendants nevertheless contend that the claims implicate the federal regulation of tobacco products and therefore belong in federal court.

The Notice of Removal identifies two sources of federal law: the Family Smoking Prevention and Tobacco Control Act ("TCA"), which authorizes Food and Drug Administration regulation of tobacco products, and a 2015 FDA rule providing categorical exclusions from environmental-review documentation under the National Environmental Policy Act. Neither supplies an element of the County's claims. Indeed, the former expressly preserves state and local regulatory authority over tobacco products, including through product-liability law, while the latter has nothing to do with this case.

None of the County's claims invokes those federal standards, challenges federal agency action, or requires a ruling on the validity or meaning of federal law. A federal district court in Maryland rejected a materially similar jurisdictional theory in a municipal cigarette-filter action. *Mayor & City Council of Baltimore v. Philip Morris USA Inc.*, No. 1:23-cv-00303-JRR, 2024 WL 229586 (D. Md. Jan. 19, 2024) ("*Baltimore*"). The same result is required here.

///

## II. BACKGROUND

Modern cigarette filters are made of a substance called cellulose acetate, a synthetic plastic polymer that does not biodegrade under ordinary environmental conditions. (*See* Compl. ¶ 4.) For decades, Defendants have known that a substantial percentage of those filters are discarded onto streets, sidewalks, parks, public rights-of-way, transit corridors, storm drains, and other public places, eventually making their way into municipal drainage systems and waterways. (Id. ¶ 5.) This flood of cigarette butts results in part from the fact that Defendants have knowingly perpetuated the misperception that the filters in their cigarettes are made from biodegradable cotton, so their customers feel free to discard butts on the ground under the belief that they will eventually be absorbed harmlessly by the environment. (*Id*. ¶ 7.)

Defendants have also known for decades that alternatives to cellulose acetate were available. The Complaint alleges that several Defendants explored a biodegradable filter that could have been implemented at a cost of approximately two hundredths of a cent per pack. (Compl. ¶¶ 151, 162.) Yet Defendants retained cellulose acetate filters and externalized the costs of collecting and disposing of the resulting persistent plastic waste onto cities and towns across the United States. (*Id*.)

Sacramento County has not been spared from the continuing accumulation of cigarette-filter waste. The County incurs substantial costs investigating, collecting, removing, managing, and disposing of discarded filters and maintaining County property, infrastructure, stormwater systems, and waterways affected by that waste. (Compl. ¶¶ 8, 16, 19–20.)

Accordingly, on July 17, 2026, the County sued Defendants in Sacramento County Superior Court to recover costs it has incurred and continues to incur as a result of discarded cigarette filters. The County pleads six substantive causes of action under California law: public nuisance under Cal. Civ. Code §§ 3479-3480 (Count I); continuing trespass (Count II); negligent design defect (Count III); strict products liability for design defect (Count IV); unjust enrichment and restitution (Count V); and unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq*. (Count VI). It also seeks declaratory relief (Count VII) and injunctive relief and abatement (Count VIII). (Compl. ¶¶ 226-335.) The County expressly disclaimed "assert[ing] any claim arising under federal law," and clearly states "[n]o federal question is presented on the face of this Complaint." (Compl. ¶ 108.)

Yet on August 28, the Removing Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, alleging that the County's garden-variety state-law claims somehow implicate a "distinct regulatory scheme" governing the tobacco industry. *See* Notice of Removal of Civil Action from State Court Dkt. No. 1, ¶ 16 ("Notice").

## III. ARGUMENT

### A. Legal standard

Federal courts are axiomatically "courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005) (internal quotation omitted). This rule embodies the "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, [by requiring] that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Healy v. Ratta*, 292 U.S. 263, 270 (1934).

Under 28 U.S.C. § 1331, Congress has granted federal district courts jurisdiction "of all civil actions arising under" federal law. But under the "well-pleaded complaint rule," a civil action arises under federal law only "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Because federal jurisdiction therefore "depends solely on the plaintiff's claims for relief and not on anticipated defenses to those claims," *City of Oakland v. BP PLC*, 969 F.3d 895, 904 (9th Cir. 2020) (quoting *ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality of Mont.*, 213 F.3d 1108, 1113 (9th Cir. 2000)), "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue," *Caterpillar*, 482 U.S. at 393. Therefore, as the "master of the claim," the plaintiff can generally "avoid federal jurisdiction by exclusive reliance on state law." *Id.* at 392.[1]

---

[1] The Removing Defendants contend that, because the County's claims concern the "use" of cigarettes, they were released by the 1998 Master Settlement Agreement ("MSA"), and that the release issue must be resolved by California's MSA court. (Notice ¶ 2 n.1.) The County disputes that premise: it seeks recovery for its own proprietary and governmental injuries arising from persistent filter waste, not smoking-related disease or healthcare expenditures. (Compl. ¶¶ 3, 20.) In any event, whether the MSA releases the County's claims

There is, however, a "special" and "small" category of cases in which state law supplies the cause of action but that "a federal forum may entertain." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg*., 545 U.S. 308, 314 (2005). A state-law cause of action "arises under" federal law for removal purposes only if a federal issue provides a "necessary element" of the plaintiff's "claim for relief." *City of Oakland*, 969 F.3d at 904 (quoting *Empire Healthchoice*, 547 U.S. at 699). "Only a few cases have fallen into this 'slim category,'" *City of Oakland*, 969 F.3d at 904 (quoting *Empire Healthchoice*, 547 U.S. at 699), which lies at "the outer reaches of § 1331," *Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 810 (1986).

The Removing Defendants bear the burden of establishing federal jurisdiction. Removal statutes are "strictly construe[d], and any doubt concerning removability is resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

**B. <u>Remand is required because this Court lacks subject-matter jurisdiction.</u>**

In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, the Supreme Court established a four-part test for determining whether state-law claims raise federal issues sufficient to support federal-question jurisdiction. 545 U.S. at 314. A state-law claim arises under federal law only if a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). "[A]ll four requirements" must be satisfied. *Id.* The Removing Defendants cannot carry that burden.

**1. <u>The County's state-law causes of action do not necessarily raise any disputed issue of federal law.</u>**

There is a reason that the *Grable* category of federal-question cases is described as "slim," "special" and "small": Because "'a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption,'" a state-law cause of action arises under federal law

---

presents, at most, a state-law release or forum defense that cannot create federal-question jurisdiction. See Caterpillar, 482 U.S. at 393.

pursuant to § 1331 only when a federal issue forms an intrinsic part of the plaintiff's prima facie case, providing a "necessary element" of the plaintiff's "claim for relief." *City of Oakland*, 969 F.3d at 904 (quoting *Caterpillar*, 482 U.S. at 393). Indeed, the Removing Defendants acknowledge that federal question jurisdiction exists under *Grable* only when the plaintiff must prove a "'[federal] case within a [state] case'" to establish a claim. (Notice ¶ 19) (quoting *Gunn*, 568 U.S. at 258). Furthermore, even when a state-law claim could raise a federal issue, federal jurisdiction is not necessarily invoked when that claim can succeed on an "alternative and independent" state-law theory. *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346-47 (9th Cir. 1996). Thus, "mere references to federal law" do not create jurisdiction where state law provides an independent basis for liability. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 675 (9th Cir. 2012) (internal quotations omitted).

The "necessarily rais[ed]" and "actually disputed" federal issues required by *Grable* are absent here. (Notice ¶ 14.) Every one of the County's causes of action arises under California law, and the County disclaims "any claim arising under federal law." (Compl. ¶ 108.) The County likewise disclaims traditional smoking-and-health claims, including claims for personal injuries, healthcare expenditures, smoking-related disease, nicotine addiction, cigarette advertising, labeling, or federally mandated health warnings. (Compl. ¶¶ 3, 20, 290.) No federal issue must be resolved as part of the County's prima facie case.

The Removing Defendants nonetheless contend this case involves a "distinct regulatory scheme" addressing tobacco and health. (Notice ¶ 16) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 137, 144 (2000)). But the Removing Defendants "have not pointed to a specific issue of federal law that must necessarily be resolved to adjudicate the [County's] state law claims." *Cty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934, 938 (N.D. Cal. 2018). Instead, the Removing Defendants "mostly gesture to federal law and federal concerns in a generalized way." *Id.* at 938. That is insufficient under *Grable*.

i. **<u>The County's design-defect claims do not require proof that a safer alternative design would satisfy TCA's requirements for product modification</u>.**

For example, the Removing Defendants cannot point to any issue of federal law that is

necessarily implicated by the County's design-defect claim—whether lying in tort or strict products liability.

Under California products liability law, a plaintiff seeking to establish a strict-liability claim for design defect must satisfy the risk-utility test, under which a design is defective when its risks outweigh its benefits. The plaintiff's initial burden is to show "that the product's design proximately caused injury." *Kim v. Toyota Motor Corp*., 6 Cal. 5th 21, 30 (2018) (quoting *Barker v. Lull Eng'g Co.*, 20 Cal.3d 413, 430 (1978)). The burden then shifts to the defendant to establish, "in light of the relevant factors, that on balance the benefits of the challenged design outweigh the risk of danger inherent in such design." *Id*. (quoting 20 Cal.3d at 432).

The Removing Defendants insist that the County's design-defect claim necessarily implicates issues under the TCA. But that design-defect claim has nothing to do with the Act. Just like the City of Baltimore's design-defect claims in *Baltimore*, the County "does not challenge Defendants' compliance with the TCA; does not invoke the TCA; does not challenge the adequacy of the TCA or demand additional TCA-like restrictions or conditions; nor does [the County] demand an injunction requiring Defendants use biodegradable filters in their cigarettes." 2024 WL 229586, at *5. Instead, the County's "defective design claims hinge on allegations that Defendants' cigarette filters, regardless of federal regulation compliance, are defective and unreasonably dangerous to the environment, and Defendants placed them in the market aware of their defective condition." *Id*. For these reasons, the Federal District Court for the District of Maryland concluded that "[r]esolution of these claims does not necessitate resolution of any federal question or issue," and ordered a remand. *Id*.

The Removing Defendants nonetheless contend that the County cannot prove a safer alternative design without proving that a biodegradable filter would satisfy the TCA's requirements for authorizing product modifications. (Notice ¶ 19.) That contention mischaracterizes both the elements of California design-defect claims and the role of the TCA.

The TCA sets requirements manufacturers must satisfy before commercially distributing a new tobacco product or modifying an existing product. 21 U.S.C. § 387j(a)(1). The Act does not make federal authorization an element that a plaintiff must prove to obtain relief under California tort law.

Federal product standards therefore do not become part of the County's prima facie case. (Notice ¶ 16.)

Moreover, California law does not invariably require proof of a safer alternative design. Under the risk-utility test, a safer alternative is but one factor "among other relevant factors" considered in determining whether a design's benefits outweigh its risks. *Barker*, 20 Cal. 3d at 431. Although the Complaint alleges that feasible alternative designs and materials existed, the County does not rely on "any single alternative design" and need not do so to prevail. (Compl. ¶¶ 174, 179, 285.)

Further, even when a party decides to address safer alternative designs to prove a product's lack of utility, that party must prove only the "*mechanical* feasibility of a safer alternative design" and "the final cost of an improved design." *Barker*, 20 Cal.3d at 431 (emphasis added). Mechanical feasibility is a question of engineering science, not federal regulatory compliance. And that standard requires demonstrating only that a safer alternative *could be created*—not that it necessarily exists or that Defendants could necessarily have implemented it. The Removing Defendants' attempt to conflate engineering feasibility with regulatory compatibility therefore finds no support in California law.

The County's negligent design claim leads to the same result. In California, to establish a claim for negligence, a plaintiff must show whether the defendant acted reasonably considering the foreseeable risks and whether the defendant's conduct caused injury. *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 477-79 (2001). Federal law supplies none of those elements.

At most, the Removing Defendants might invoke the TCA's modification requirements as a defense—whether to argue preemption, address product utility, or offer evidence concerning the reasonableness of their conduct. Those matters are not elements of the County's claims. A federal defense, including preemption, cannot satisfy the well-pleaded-complaint rule. *Caterpillar*, 482 U.S. at 393.

Further still, preemption cannot occur in this case. In the TCA, Congress preserved a substantial state and local role in regulating tobacco even as it assigned an important role to the FDA. The Ninth Circuit has recognized Congress's "explicit decision to preserve for the states a robust role in regulating, and even banning, sales of tobacco products." *R.J. Reynolds Tobacco Co. v. Cty. of Los*

*Angeles*, 29 F.4th 542, 550 (9th Cir. 2022) (quoting *U.S. Smokeless Tobacco Mfg. Co. v. City of New York*, 708 F.3d 428, 436 (2d Cir. 2013)). Indeed, the court held that TCA "broadly preserves state, local, and tribal power to enact *any* regulation concerning tobacco products that is 'in addition to or more stringent' than those promulgated by the TCA"—including by "indirectly regulating tobacco products through litigation." *R.J. Reynolds Tobacco Co.*, 29 F.4th at 550 (quoting 21 U.S.C. § 387p(a)(1)).

The Second District Court of Appeal of California also recognized in *Major v. R.J. Reynolds Tobacco Co.* that "there is no indication that Congress had a 'clear and manifest purpose' to insulate the tobacco industry from state tort liability . . . [as such, the] traditional police powers of the states to regulate cigarette sales and impose tort liability on cigarette manufacturers remain." 14 Cal. App. 5th 1179, 1192 (2017) (quoting *R.J. Reynolds Tobacco Co. v. Marotta*, 214 So. 3d 590, 600 (Fla. 2017)). And *Baltimore* applied the same principle to materially similar cigarette-filter claims. 2024 WL 229586, at *4-6.

Section 387p(b) reinforces this division of authority by providing that no TCA provision "shall be construed to modify or otherwise affect any action or the liability of any person under the product liability law of any State." 21 U.S.C. § 387p(b). That language confirms that Congress did not transform state product-liability claims into federal claims.

The full preemptive scope of this provision, as well as the scope of the preservation, preemption, and savings clauses in § 387p(a), need not be resolved in this case to decide jurisdiction. Even if the Removing Defendants possess a colorable preemption defense, *Caterpillar* forecloses removal based on such defenses. 482 U.S. at 393.

**ii. <u>The County's public nuisance claim does not require "reweighing" any regulatory balance struck by Congress or the FDA.</u>**

The Removing Defendants fare no better in trying to establish federal jurisdiction through the County's public nuisance claim. In California, a public nuisance results from a "substantial and unreasonable" interference "with a right common to the public." *People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 1105 n.3 (1997). The Removing Defendants cannot identify any federal issue that must necessarily be addressed in resolving that claim.

The Removing Defendants contend that assessing whether filtered cigarettes give rise to a public nuisance will require the Court to reweigh public-health and environmental judgments made by Congress and FDA. (Notice ¶ 19.) The California appellate court in *Major* rejected this exact argument, holding that state court lawsuits do not stand as any "obstacle" to Congress's objectives in the TCA. 14 Cal. App. 5th at 1189. And the Maryland district court reached the same result for nuisance claims indistinguishable from the County's own. *See Baltimore*, 2024 WL 229586, at *5-6.

These courts were correct. The TCA's market-authorization provisions do not supply or replace any element of a California public nuisance claim. The TCA does not require manufacturers to use cellulose acetate filters—leaving the choice of filter entirely to the manufacturers themselves. And the TCA does not address, let alone resolve, any question about whether tobacco manufacturers should face financial consequences for the filter type they choose. In any event, any argument that federal authorization or compliance preempts state nuisance law or bears on the reasonableness of Defendants' actions would constitute a defense to liability—not part of the County's affirmative case.

The Notice also relies on FDA's 2015 rule, *National Environmental Policy Act; Environmental Assessments for Tobacco Products; Categorical Exclusions*, 80 Fed. Reg. 57,531 (Sept. 24, 2015). (Notice ¶ 16.) But this regulation is immaterial to the County's public nuisance claim. This regulation does not even regulate tobacco companies. Instead, it regulates the *government*, providing a "categorical exclusion" to the FDA from any requirement under NEPA that the agency conduct "environmental assessment[s] or "environmental impact statements" before approving new cigarette products. *Id*. at 57,531 (citing 40 C.F.R. parts 1500 to 1508).

That rule is not a substantive cigarette-filter standard and does not establish any element of California nuisance liability. 80 Fed. Reg. at 57,531. And only balancing that the FDA conducted in promulgating that regulation concerned the costs and benefits of requiring the agency to individually review the environmental impact of every new tobacco product versus relieving itself of that burden. FDA opted for the latter course only after recognizing that the harms from filters were already well-known, "the classes of actions that FDA proposed for categorical exclusions do not result in additional product being marketed," and the environmental effects of tobacco products were so small "compared to the existing environmental effects" from other types of "toxic waste" as to make additional

paperwork unnecessary. *Id*. This paperwork-reduction assessment has nothing to do with whether tobacco companies should have the freedom to use non-biodegradable cellulose acetate filters, much less whether they should remain free from liability under state law for that choice.

* * *

The Removing Defendants identify no case holding that state-law claims arise under federal law merely because the defendant's tobacco product is federally regulated. On the contrary, their cited authorities instead confirm that *Grable* jurisdiction exists only when federal law is part of the plaintiff's affirmative case.

The cases cited in the Notice do not concern the TCA, FDA's NEPA rule, or claims related to this lawsuit. Nor did they concern preemption defenses.

On the contrary, in each of the Removing Defendants' cases, a federal issue necessarily had to be resolved as part of the plaintiff's prima facie case. That is why the plaintiff had to prove a "'[federal] case within a [state] case'" in *Gunn* (Notice ¶ 19) (quoting 568 U.S. at 258): The plaintiff's legal malpractice claim required proof that "'[but for the lawyer's error] he would have prevailed in his federal patent infringement case,'" necessitating application of federal patent law. (*Id*.) That is also why the plaintiff's state law claims in *Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772 (8th Cir. 2009) "directly implicat[ed] actions taken by" an administrative agency: Several of the plaintiffs' claims alleged that a federally approved stock-borrowing program was designed to fail, raising questions about whether the agency should have approved it in the first place. (Notice ¶ 15) (quoting 559 F.3d at 779). That is even why the plaintiff's claim in *McKay v. City and County of San Francisco* required "second guess[ing]" final agency action (Notice ¶ 15) (quoting No. 16-CV-03561 NC, 2016 WL 7425927, at *4 (N.D. Cal. Dec. 23, 2016)): The plaintiff alleged that the flight paths going into San Francisco International Airport created a public nuisance, and the remedy they sought required "reassessment, revaluation and reevaluation" of the FAA's decision approving the flight path. 2016 WL 7425927, at *4.

In at least one of the Removing Defendants' cases, *Board of Commissioners of Southeast Louisiana Flood Protection Authority-East v. Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714 (5th Cir. 2017), the plaintiffs raised the necessary federal issue *themselves* because their state common-

law claims invoked three separate federal statutes to establish the relevant "standards of care relevant to the defendant's conduct." *Id*. at 727.

Those cases are materially different. The County does not rely on federal law and expressly disclaims it. The Removing Defendants have not identified any federal issue the County must establish as part of its prima facie case. The authorities that the Removing Defendants invoke therefore ultimately serve only to illustrate why jurisdiction is absent here.

The authorities that should govern this case require remand. These include *Baltimore*, which ordered remand of cigarette-filter claims that are closely analogous to those raised here. 2024 WL 229586, at *4-6. *Major* addresses specifically the relationship between California tort law and the TCA. 14 Cal. App. 5th at 1189-92.and *City of Oakland* rejected exactly the sort of vague gesturing that the Removing Defendants are trying here, repudiating the idea that a variety of "federal interests," including "energy policy, national security, and foreign policy" concerns were enough to convert a garden-variety state-law public nuisance claim into a federal case. 969 F.3d at 902, 906-07. These cases should be controlling here, and they require remand.

**2. <u>The Removing Defendants have not shown that any federal issue is substantial to the federal system as a whole.</u>**

In any event, the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 813 (1986). A federal issue must be "substantial" to the federal system as a whole—not merely important to the parties. *Gunn*, 568 U.S. at 260. Relevant considerations include whether the case presents a pure and dispositive issue of federal law, challenges the validity or operation of a federal program, or will control numerous other cases. *City of Oakland*, 969 F.3d at 905. Jurisdiction is disfavored where the dispute is "fact-bound and situation-specific." *Id.* at 906 (quoting *Bender v. Jordan*, 623 F.3d 1128, 1130 (D.C. Cir. 2010)).

No asserted federal issue here is substantial in that jurisdictional sense. The County does not challenge the validity of the TCA, FDA's authority, a product-authorization decision, or the operation of a federal program. No federal agency is a party. The dispute instead concerns Defendants' conduct, the disposal of their filters, Sacramento County's local conditions and expenditures, and the elements

of California tort law.

Any questions concerning regulatory compliance, product modification, or preemption would be fact-bound and product-specific. Their resolution would neither control numerous other cases nor settle a pure issue of federal law. Accordingly, this factor also requires remand.

**3. <u>Congress has struck the balance of judicial responsibility in favor of state-court adjudication.</u>**

Even if the other *Grable* factors were satisfied, removal would disrupt the congressionally approved division of judicial responsibility. The absence of a federal cause of action is "an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331." *Grable*, 545 U.S. at 318. Here, Congress created no federal damages action for the injuries alleged and did not assign ordinary state product-liability and nuisance litigation to federal courts.

Congress instead expressly preserved state product-liability law, 21 U.S.C. § 387p(b), and retained substantial state and local regulatory authority. Accepting the Removing Defendants' theory would open federal courts to a broad range of traditional state tort cases whenever a product is federally regulated or a defendant raises preemption. That result would substantially alter the federal-state balance and expand the "special and small" *Grable* category beyond recognition. Remand is therefore independently required under the fourth factor.

**C. <u>The County is entitled to an award of attorney fees.</u>**

Under 28 U.S.C. § 1447(c), a court may award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Fees are appropriate when the removing party lacked an objectively reasonable basis for removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Removing Defendants rely principally on federal defenses rather than any federal element of the County's claims, and *Baltimore* rejected a materially similar jurisdictional theory before this removal. Although that decision is persuasive rather than binding, it underscores the absence of an objectively reasonable basis for removal. If the Court grants remand, the County respectfully requests leave to establish its recoverable costs and expenses by declaration.

## IV. <u>CONCLUSION</u>

The Court should remand this action to the Superior Court of California for the County of

Sacramento; award Plaintiff the costs and actual expenses, including attorney fees, incurred as a result of removal, with the amount to be established by later declaration; and hold only the deadlines to answer or otherwise respond to the Complaint in abeyance pending resolution of this motion. This request does not seek to stay discovery, the Rule 26(f) conference, initial disclosures, or other scheduling obligations.

## V. CERTIFICATE REGARDING MEET AND CONFER

Pursuant to Local Rule 230, Plaintiff's counsel certifies that the parties met and conferred regarding the issues raised in this Motion on August 24, 2026. The parties were unable to resolve the issues. Accordingly, Plaintiff's meet and confer efforts have been exhausted.

DATED: September 22, 2026

*/s/Karen Barth Menzies*
Karen Barth Menzies (CA SBN 180234)
karen@justicelc.com
**JUSTICE LAW COLLABORATIVE, LLC**
6701 Center Drive West, 1400
Los Angeles, California 90045
Telephone: (310) 363-0030

Noble McIntyre (*pro hac vice* forthcoming)
noble@mcintyrelaw.com
Christopher Schnieders (*pro hac vice* forthcoming)
chris@mcintyreschnieders.com
**MCINTYRE SCHNIEDERS**
6731 W. 121st St.
Overland Park, Kansas 66209
Telephone: (913) 627-9416

David Grossman (*pro hac vice* forthcoming)
dgrossman@kellyandgrossman.com
**KELLY & GROSSMAN, LLP**
1248 Montauk Highway
West Islip, New York 11795
Telephone: (631) 314-4996

J. Carl Cecere (*pro hac vice* forthcoming)
ccecere@cecerepc.com
**CECERE PC**
6035 McCommas Boulevard
Dallas, Texas 75206
Telephone: (469) 600-9455

*Counsel for Plaintiff, County of Sacramento*

**CERTIFICATE OF SERVICE**

I certify that on September 22, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of the filing to the email addresses denoted on the Notice of Electronic Filing.

*/s/Karen Barth Menzies*
Karen Barth Menzies